UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 09-175 (RHK/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ruben Lopez-Gonzalez | |
| Respondent. | |

_____

Lonnie F. Bryan for Plaintiff United States.
Reynaldo A. Aligada, Jr. for Respondent Ruben Lopez-Gonzalez.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on March 4, 2009, for a hearing on the Government's Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [#1]. Specifically, the Government seeks to involuntarily commit Mr. Ruben Lopez-Gonzalez to the mental health unit at the Federal Medical Center (FMC) in Rochester, Minnesota. The Petition alleges that Mr. Lopez-Gonzalez is presently suffering from a mental disease or defect for the treatment of which he is in need of custody and care in a suitable psychiatric facility. Mr. Lopez-Gonzalez is currently serving a 77-month sentence imposed by the United States District Court, Southern District of California, for illegal reentry to the United States as a deported alien. His anticipated release date is April 18, 2012. As set forth below, the Court recommends that the Petition be granted.

## I. FINDINGS OF FACT

On March 4, 2009, the Court held a hearing on the Government's Petition. Mr. Lopez-Gonzalez was present for the hearing and testified at the hearing. FMC-Rochester Staff

Psychiatrist Dr. Daniel J. Shine, M.D., testified at the hearing regarding Mr. Lopez-Gonzalez's mental impairments, medical history, and treatment at FMC-Rochester. Dr. Shine has been a staff psychiatrist at FMC-Rochester since 2006. (Gov't Ex. C.) Dr. Shine testified to a reasonable degree of medical certainty that Mr. Lopez-Gonzalez has a mental disease or defect, and testified that he has diagnosed Mr. Lopez-Gonzalez with Psychotic Disorder Not Otherwise Specified.[1] Dr. Shine testified that this diagnosis falls into the "Not Otherwise Specified" category due to complications in Mr. Lopez-Gonzalez's general medical history, specifically a history of central nervous system infection in an area of the brain that could lead to a psychotic disorder. Dr. Shine testified that Mr. Lopez-Gonzalez has a brain mass that at last measurement was 1.25 inches by 1 inch. Dr. Shine testified that the mass is a symptom of toxoplasmosis of the brain, a treatable condition caused by common bacteria. Toxoplasmosis, if left untreated, will cause death. Mr. Lopez-Gonzalez has taken anti-parasitic medication for toxoplasmosis in the past, but is currently refusing treatment. Dr. Shine testified that if toxoplasmosis could be excluded as a cause of Mr. Lopez-Gonzalez's psychotic disorder, Mr. Lopez-Gonzalez's psychiatric diagnosis would be Schizophrenia.[2] However, Dr. Shine testified that the presence

---

[1] The diagnosis Psychotic Disorder Not Otherwise Specified includes "psychotic symptomatology (i.e., delusions, hallucinations, disorganized speech) about which there is inadequate information to make a specific diagnosis or about which there is contradictory information." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)* 315 (4th ed., American Psychiatric Association, 1994)(hereinafter "DSM-IV"). Examples include "situations in which the clinician has concluded that a Psychotic Disorder is present, but is unable to determine whether it is primary, due to a general medical condition, or substance induced." *Id.*

[2] Schizophrenia is a disturbance that lasts for at least six months and includes at least one month of active-phase symptoms (i.e., two or more of the following: delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, negative symptoms. Schizophrenia has various subtypes, including Paranoid, Disorganized, Catatonic, Undifferentiated, and Residual.) *DSM-IV at 273.*

of toxoplasmosis makes the specific psychiatric diagnosis "muddy." Dr. Shine testified that Mr. Lopez-Gonzalez is also HIV positive, which compromises his immunity to diseases like toxoplasmosis, and he is refusing HIV treatment as well. Mr. Lopez-Gonzalez also suffers from Hepatitis C and has a long history of substance abuse. (Gov't Ex. B.)

**A.      History of Mental Illness**

Mr. Lopez-Gonzalez, a native of Guadalajara, Mexico, was first incarcerated by the Federal Bureau of Prisons (BOP) from 1997 to 2003 for illegal reentry. (Gov't Ex. B.) Dr. Shine testified that Mr. Lopez-Gonzalez was treated for depression as early as 1993 and was diagnosed and medicated for depression at FCI-Fairton, New Jersey in 2003.[3] Dr. Shine testified that Mr. Lopez-Gonzalez's mental state is dramatically different today than it was in 2003; he now has psychosis as well as depression. Mr. Lopez-Gonzalez was arrested for the instant offense in September 2006 and was initially detained at the Metropolitan Correctional Center (MCC) in San Diego, California. (Gov't Ex. B.) In August 2007, he was treated at nearby Alvarado Hospital for an infection related to HIV. *Id.* Upon his return to MCC San Diego, he reported that security officers at Alvarado Hospital wanted to kill him and that staff at the hospital had raped and killed his mother and sister. *Id.* He was subsequently transferred to the medical health unit (MHU) at MCC San Diego, where Mr. Lopez-Gonzalez continued to assert and believe in the events he reported occurring at the hospital. *Id.* Later, in September 2007, Mr. Lopez-Gonzalez was transferred to FMC-Butner, North Carolina, a medical facility similar to FMC-Rochester. *Id.*

---

[3] At the hearing, counsel for Mr. Lopez-Gonzalez requested additional time to investigate whether it would be appropriate to reopen the record to allow testimony from the doctor who treated Mr. Lopez-Gonzalez at FCI-Fairton. After reviewing the records relating to Mr. Lopez-Gonzalez's treatment, counsel opted not to reopen the record or call additional witnesses. (Dkt. No. 10.)

According to a September 20, 2007 report, Mr. Lopez-Gonzalez has a long history of mental health treatment for anxiety, depression, and delusions, including prior prescriptions of the anti-depressants Prozac, Sinequan and Doxepin, and the antipsychotic Risperdal. *Id.* In November 2007, he was transferred from FMC-Butner to FCI-Butner after a threat from a rival gang. *Id.* Records indicate that he exhibited delusional symptoms during his placement in the special housing unit (SHU) at FCI-Butner. *Id.* A few months later, in February 2008, Mr. Lopez-Gonzalez was transferred to FCI-Terre Haute, where he was not observed to exhibit signs of delusional thought content or other psychological symptoms. *Id.* However, when he arrived at FMC-Rochester in July 2008 for the treatment of AIDS, toxoplasmosis of the brain, and hepatitis, Mr. Lopez-Gonzalez reported hallucinations of seeing other inmates fighting on the roof of an adjacent building and told staff of harm having been inflicted on other members of his family and of a conspiracy to harm him as well. *Id.*

Dr. Shine testified that Mr. Lopez-Gonzalez's delusions often include repetitive themes, such as persecution and violence. Dr. Shine testified that Mr. Lopez-Gonzalez believes he is at risk of harm, that his family has been harmed, that something horrible has happened to him and other people, and that the BOP wants to silence him. Specifically, Mr. Lopez-Gonzalez believes that fictional person named Mike Reeds, who he believes is a hospital administrator at Alvarado Hospital, is angry at him because Mike Reeds' wife gave Mr. Lopez-Gonzalez $125,000 and as a result Mr. Lopez-Gonzalez was "made legal." Mr. Lopez-Gonzalez believes that Mike Reeds has followed him from institution to institution, that Reeds has had Mr. Lopez-Gonzalez's brother's arm cut off, his nephews killed and put in various SHUs, and that his family, mother and sisters are also incarcerated in the SHU with him. Dr. Shine testified that Mr. Lopez-

Gonzalez's family members have never been in the SHU as inmates where Lopez-Gonzalez has been. Dr. Shine also testified that Mr. Lopez-Gonzalez has reported multiple times that he has heard someone raping a nurse. Dr. Shine testified that Mr. Lopez-Gonzalez believes that all the doctors at FMC-Rochester are part of a conspiracy with Mike Reeds to make him take medications. Mr. Lopez-Gonzalez testified that the doctors at FMC make up false "histories" about him and that is why he refuses to talk to them.

When Mr. Lopez-Gonzalez arrived at FMC-Rochester, he refused to sign the consent form for treatment with anti-psychotics. Mr. Lopez-Gonzalez testified that he would take medication if he needs it, but testified he does not need it right now. Dr. Shine testified that Mr. Lopez-Gonzalez is currently housed in the SHU at FMC-Rochester because he is unable to function in the general population and because he showed signs of psychosis. Mr. Lopez-Gonzalez testified that he requested to be housed away from the general population because he is afraid something bad will happen. Dr. Shine testified that Mr. Lopez-Gonzalez is a low risk of harm to himself or others, that he eats three meals a day regularly, and that his personal hygiene is adequate. Over the last four months, Mr. Lopez-Gonzalez has been less vocal and will not speak to Dr. Shine or other FMC staff. He has covered his cell window with paper, has become enraged at the sight of Dr. Shine (e.g., yells, curses, throws food at the window), and has seemed to "shut down." However, Dr. Shine testified that when Mr. Lopez-Gonzalez has occasionally opened up to staff, his delusions are still present. Mr. Lopez-Gonzalez continues to be paranoid, stating on a regular basis that he would be killed or harmed on the open unit. (Gov't Ex. B.) He continually refuses to consider therapeutic release from the SHU due to paranoia, and has no insight into his mental illness. *Id.* When interviewed on October 16, 2008, Mr. Lopez-Gonzalez

stated he has never been treated for mental health problems in the past, that he is currently not suffering from any symptoms of mental illness, and that psychiatric and HIV treatment are unnecessary. *Id.* Mr. Lopez-Gonzalez testified at the hearing that he did not need medication or treatment for mental or physical illness.

Dr. Shine testified that Mr. Lopez-Gonzalez is in need of care and custody at FMC-Rochester, which is a suitable facility within the meaning of 18 U.S.C. § 4245(a) because Mr. Lopez-Gonzalez requires stabilization of psychosis. Only a few BOP facilities, including FMC-Rochester, have this capability. Additionally, FMC-Rochester is the designated center of excellence for HIV care within the BOP system. Dr. Shine testified that FMC-Rochester staff hope Mr. Lopez-Gonzalez will benefit from treatment by becoming less paranoid and consequently becoming able to function in the general population. Additionally, Dr. Shine testified that Mr. Lopez-Gonzalez's mental illness is affecting his decision not to take anti-psychotic medication, HIV immunity medications, and his decision not to undergo treatment for toxoplasmosis.

Mr. Lopez-Gonzalez testified at the hearing that he does not need antipsychotic medication or treatment. He testified that he does want to leave the SHU to go to the open unit, but is afraid that he will harm someone or that someone will harm him. Mr. Lopez-Gonzalez testified that Mike Reeds is not pulling strings and is not associated with Dr. Shine. He further testified that he put paper over his windows so the FMC-Rochester staff and doctors would understand they are doing something wrong by keeping him in segregation and by making up false "histories" about him regarding his paranoia, hallucinations and brain tumor. Mr. Lopez-Gonzalez introduced one exhibit showing staff physician notes on his medical status from April

and May 2007.  (Def. Ex. 1.)

## II.  STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 4245, a federal prisoner may not be transferred to a mental hospital or treatment facility without the prisoner's consent or a court order.  *See United States v. Watson*, 893 F.2d 970, 975 (8th Cir. 1990) vacated in part on reh'g on other grounds by *United States v. Holmes*, 900 F.2d 1322 (8th Cir. 1990).  If the prisoner objects to being transferred, then the court must hold a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a); *United States v. Jones*, 811 F.2d 444, 447 (8th Cir.1987).  If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. 18 U.S.C. § 4245(d). Whether a person is in need of care or treatment is a question of fact, left to the judicial decision maker.  *Watson*, 893 F. 2d at 972.  If the court determines that the inmate is suffering from a mental disease and is in need of treatment, the Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." 18 U.S.C. § 4245(d).

This Court is, therefore, required to determine three issues: 1) is Mr. Lopez-Gonzalez suffering from a mental disease or defect; 2) is he in need of custody for care or treatment of that disease or defect; and 3) is the proposed facility a suitable facility.

### III.   LEGAL ANALYSIS

A.   **Determination of Mental Disease or Defect**

The first issue is whether Mr. Lopez-Gonzalez is suffering from a mental disease or defect.  Dr. Shine testified that he has diagnosed Mr. Lopez-Gonzalez with Psychotic Disorder Not Otherwise Specified, and that his colleagues at FMC-Rochester concur with that diagnosis.  Dr. Shine made this assessment based on a review of Mr. Lopez-Gonzalez's records and central file, attempted personal interactions with Mr. Lopez-Gonzalez, and reports from other FMC Rochester staff.  Dr. Shine testified about numerous symptoms indicative of Mr. Lopez-Gonzalez mental disease:  his delusions, including those about Mike Reeds, harm to himself and his family, a BOP conspiracy; his visual and auditory hallucinations of seeing inmates fighting on a nearby roof and hearing someone raping a nurse; and his lack of insight into his mental illness and his physical illnesses.  Based on Dr. Shine's expert opinion, the testimony of Mr. Lopez-Gonzalez, and the records before the Court, we conclude that the government has satisfied its burden of showing by a preponderance of the evidence that Mr. Lopez-Gonzalez is suffering from a mental disease or defect.

B.   **Determination of Need of Custody for Care or Treatment**

The second issue is whether Mr. Lopez-Gonzalez is in need of custody for care or treatment within the meaning of 18 U.S.C. § 4245.  The term "need" is not defined by 18 U.S.C. § 4245.  Whether a person is in need of care or treatment is a question of fact, left to the judicial decision maker.  In order to be needed, treatment must be more than merely beneficial to the prisoner.  *See United States v. Eckerson*, 299 F.3d 913 (8th Cir. 2002); *United States v. Horne*, 955 F.Supp. 1141, 1147 (D. Minn. 1997).  In *Watson*, the Eighth Circuit held that it is more

favorable to restore an inmate's ability to function in the general population through forced medication, than keep an inmate in seclusion, even if he functioned adequately there. 893 F.2d at 982.  In other words, the court in *Watson* found that "need" does exist if treatment would enable the prisoner to function in the general population.

Here, the government has established "need" by proving that Mr. Lopez-Gonzalez cannot function in the general prison population. Dr. Shine specifically testified that Mr. Lopez-Gonzalez is in need of custody as he is unable to function in general population due to the paranoia caused by his mental disease. Under these circumstances, we conclude that Mr. Lopez-Gonzalez is in need of custody for care and treatment.

C.      **Determination Of Whether FMC-Rochester Is A Suitable Facility**

The third issue is whether FMC-Rochester is a suitable facility for Mr. Lopez-Gonzalez's treatment and custody.  Dr. Shine testified that FMC-Rochester would be a suitable facility based on its capability to stabilize psychosis and its standing as a center of excellence for HIV treatment. Mr. Lopez-Gonzalez has not presented any evidence to the contrary. Therefore, the Court finds that FMC-Rochester is a suitable facility within the meaning of 18 U.S.C. § 4245.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Government's Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [#1] be **GRANTED**.  Mr. Ruben Lopez-Gonzalez should be committed to the custody of the Attorney General and hospitalized at FMC Rochester.

DATED: April 7, 2009                              *s/ Franklin L. Noel*
                                                  FRANKLIN L. NOEL
                                                  United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 24, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 24, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.